Mr. Salzman, we'd be pleased to hear from you. Thank you, Your Honor, and may it please the Court. Josh Salzman on behalf of HHS. To facilitate the prompt payment of Medicare claims, HHS generally pays facially valid claims with the understanding that those payments are subject to subsequent post-payment review and possible recoupment. The district court here entered an injunction that bars HHS from recouping funds that an auditor and two independent levels of reviewers determined plaintiff was not entitled to receive. That injunction should be set aside for two sets of reasons. First, plaintiff is not likely to prevail on the merits of its procedural due process claim. Plaintiff has already received pre-deprivation review, and as this Court recognized in Cumberland County, has access to post-deprivation review as well. The due process clause... We absolutely... The Court said at page 56 of Cumberland there were due process concerns and that that argument had been presented and that those concerns... Is that a yes or a no? I think yes, Your Honor, but obviously because the posture was a little different. I mean, I think this is a question of whether the Court's going to stand. You know what the words stare decisis mean? You stand by the decision. You don't look for thin kind of gossamer distinctions that are more fanciful than real, and if there is ever a case in which we would stand by the decision and send a consistent signal to district courts, most of whom have had no trouble in seeing that Cumberland governed this case, and to be backing off in the face of someone who in the face of a court, in my judgment, declined to follow our own precedent would be a terrible step. I completely agree, Your Honor. I agree there were... Cumberland does speak to these exact same concerns quite directly and I think resolves them definitively.  in a very careful and well-reasoned opinion. I completely agree, Your Honor. So I'm happy to expand at length on why that decision correctly applied the underlying analysis, but I'm... If the Court understands Cumberland to be squarely on point, which I think is correct. Does the Court have any specific questions? Judge Neiman, do you have any questions? Do you have any questions? We have no questions. Thank you, Your Honor. Mr. Wallace. So your task is to tell us why Cumberland does not control this case. Yes, Your Honor. May it please the Court, thank you for the opportunity to appear today. Your Honor, Cumberland does not address multiple issues raised in this case, but let me start with the fact that Cumberland doesn't mention Matthews v. Eldridge. Cumberland doesn't mention any of the due process cases at all. In fact, Cumberland mentions due process, the word, twice. I read the government's brief in that case. The government's brief didn't mention the word due process once. It said that this system was procedurally efficient, was procedurally adequate, and it gave all the reasons why this procedure was adequate in every respect. This was a challenge, essentially, facially to this decision, and that challenge was rejected. And it was the same system that's at issue here, the same five levels of review. The adequacy of those was brought into question, and this Court rejected that challenge. Your Honor, it's true they rejected the challenge, but in the context of mandamus relief, which is a very specific type of relief, not the relief that the appellee sought in this case and the district court has sought to give. Additionally, none of the issues raised in Matthews v. Eldridge, Goldberg v. Kelly, and the numerous precedent we've cited, including Ram v. Heckler, the 1986 decision of this Court, has addressed the prompt post-deprivation hearing rights that my client's entitled to under the Fifth Amendment to the Constitution. And so what we have, Your Honor, is a case that... Well, let me read you what was said in Cumberland. Yes, sir. It's due process... Referring to the hospital system, which would be the plaintiff in that case, similar to your client. It's due process argument is based on its presumption that in bypassing the ALJ hearing, which is your argument, it would be denying itself the opportunity to create a full administrative record at the ALJ hearing, thereby leaving itself without a record for judicial review. The Medicare Act, however, does not support the hospital system's presumptions. So what specifically does that not cover that you say should be covered? Okay. One of the facts we've raised in our brief, Your Honor, that's apparent in the record on the case below, is that there are missing facts in the administrative record that could be and, frankly, would be corrected by the ALJ. As my partner, Mr. Bittner, will explain specifically. What facts do you have in mind? The underlying data that... They make the judgment on your records. That's the only records they can have. In other words, you have medical records, you have purchase orders, you have time records, you have client files. They're all in your control. And in this case, those were reviewed and determinations were made and two levels of review were made, saying that claims were made that are not covered by Medicare. Your Honor, in the specific calculations of the extrapolation, the data that goes into those calculations was not provided to the appellee at this stage. You go after that through escalation. You go after that by taking it up from the MAC to the QIC, and if you're dissatisfied, you go to the ALJ and to the Appeals Council, and you can escalate all the way up to having the district court review the problems that you perceive, rightly or wrongly, to be with the lower levels of review. You can ask to supplement the record and whether you're allowed to. I don't know. But you go after that by normally... The normal process of review is that you go up from one... You step up from one level to another. But what you've decided to do here is to attack the whole system collaterally, not to avail yourself of the steps that were made available to you, but to go after the whole thing collaterally, which was what was done in Cumberland. And as a result, here we are. You're getting a hearing on something where you could have gotten a hearing on whatever your complaints were more promptly by pursuing the scheme that Congress had set forth for you. Your Honor, I understand the court's concern, but... And in addition, the things that you want, sir, like cross-examination and other things at the basic levels for pre-deprivation review, would compound the backlog that you're complaining with. The problem is a backlog. Congress is appropriating funds to try to take care of the backlog. The political branches have set out a scheme. The political branches understand what the problems with it are. We're not empowered to redesign that scheme through some sort of collateral review. Your Honor, you're absolutely correct. That's what you're asking us to do. Your Honor, we're actually not asking this court to impose a single procedural issue or... Mr. Murray, you're asking for cross-examination at the first two levels. No, sir, Your Honor. We're asking for the court to simply stop recoupment until such time as the government sets the ALJ hearing. We're not asking for a faster hearing. We're asking for a leveling field, leveling the playing field, so that our client can survive until the ALJ hearing takes place. It's not a question of leveling the playing field. You have two levels of review with significant right to bring experts and discovery and all the rest before recoupment ever takes place. We've got a terrible problem of overbilling here, which is sending health care costs through the roof. Congress decided to address that problem by providing for recoupment. It struck a balance here. It provided for recoupment not at the outset, but only after two levels of administrative review. And then it provided recoupment, and by the way, it allowed a procedure where a petitioner could avail himself of a five-year recoupment plan, which you've never tried. You never tried it. And the question is, who are we to tell Congress, oh, you've got to have recoupment after all of these things are done, rather than after two levels of review? That's a legislative amendment when you're asking us to do this. You're asking us to redesign a scheme which falls right in the card of Congress's efforts to control the cost of health care in this country. And we don't have that kind of power. Your Honor, it's our position, of course, that you do have the power to enjoin the recoupment until such time as our client has the time to explore the issues before. The statutory scheme says that after the second level you can get recoupment. And in this case, as a good example, we have one of your principal billers in the hospital was 160 times billing over 24 hours a day. And that same person billed on the average over several years 15.8 hours a day. And their billings for DMEs, these wheelchairs and things like this, were no purchase order supported the fact that they were actually purchased or used or that the patient needed them. Now, these were all uncovered from your own files and laid out in opinions, and you had a chance to provide other documents to show differently. But I don't know how you contradict a document where one of your health care providers is billing over 24 hours a day and making a claim for it, and now the hospital says, that money, we needed that money to operate. And the district court thought, well, we don't want to throw a big financial burden on the hospital, so we'll enjoin it. But in enjoining it, it's disrupting the very system Congress created to take care of these types of problems. Your Honor, I apologize if I may briefly respond to the question. The issue is the calculation of the extrapolation, which creates a fairly small overpayment to a large overpayment.  So they use this extrapolation method in order to find out what's going on. But you can provide a bigger sample. You have the documentation, and it's in your control. And if you want to provide a sample that's larger, I mean, they came in a couple of times by surprise and did audits. And what they found was, what, 93% of the claims should have been denied? This hospital is overbilling, and that's what they found. And now you want a court to enjoin the agency from collecting the erroneous payments. Your Honor, I apologize. I'm not certain that's in the record before the court. Your co-counsel has reserved some time. Yes, sir, Your Honor. If I may. I'd like to hear from Mr. Bittenger. Thank you, Your Honor. He's going to address some of the more specific questions that you all raised. Thank you, Your Honor. I appreciate your time today. And I understand this is a very complex issue, so I'm going to try and provide a lot of answers very quickly in 12 minutes. Let me ask you this as a threshold question to take up where your co-counsel left off. If you have a right here, it seems that the remedy you propose would equally be available to every provider in the country, which would basically disintegrate the entire payment process. Actually, that is not correct, Your Honor, because you still have to require you still have all the extreme elements necessary for the extraordinary writ of an injunction required. And if I can point your attention to here. Yeah, but they're generalized conditions. In other words, basically your argument structurally is the government shouldn't start recoupment at such an early level in the agency process. No, Your Honor. The recoupment is discretionary. CMS has the right to choose when and how to recoup. And we have tried to work with CMS, and they have denied us specific evidence that is required and only available to us to get at the ALJ level. We cannot get that evidence at the Medicare appeals level because their only ability is to remand it. We cannot get it at the district court because the district's only ability is to prove substantial evidence of conformity with regulation. If you don't like the way the first two levels went, and if you don't like the way that they're doing recoupment, you can contest that before the ALJ. You can contest the recoupment provisions before the appeals council. If you still don't like it, you can contest the timing of recoupment before a federal district court. But what you can't do is go after it collaterally in the face of a circuit precedent that's dead set against you. Your Honor, I would respectfully ask that you would focus on some of the very specific mechanics of the process. Very respectfully, Your Honor. Cumberland was asking for mandamus, trying to force the hearing immediately. My client, a small practice, has been waiting for three years for a statutorily mandated hearing, and the very important difference is... Wait a minute, wait a minute. Apparently there are several hundred thousand providers in the same situation that you are, which goes back to my original question. It seems like all of them could be, if audited, subject to the same recoupment problem. And if the remedy you seek would be available to them, whether they get it or not, it would just disintegrate the entire payment system, which Congress has set up. And as we recognized in Cumberland, while you may be making a due process argument, the remedy that you seek seems to violate the separation of powers. Actually, Your Honor, it does not. That is a hyperbole based on no specific statistics whatsoever set forth in the brief of the government. There's no evidence of hundreds of thousands. Sorry, Your Honor. The legislative and the executive branches have come up with this methodology. Now, the methodology may be deeply flawed, which is a question you would take up with the Congress, but they've come up with this methodology under their power of the purse. And you're asking us to enter into this legislative and executive field and rearrange it, which would seem to me to be a violation of the separation of powers. To pinpoint your question, Your Honor, we are not. We are asking the court for an injunction of a discretionary act. We are not asking the court to change the system. The Medicare appeals process works very... There is a remedy. The remedy is to follow the process you disagree with and challenge it on the way up, or, which I think would be the strategic decision in view of the backlog, would be to escalate it to a district court where you may get a very full and sympathetic hearing. And I'm sort of surprised you guys didn't escalate this thing up from the very beginning. Your Honor, and this is exactly why we went through the time to this. The court needs to understand the limited review of the district court in overseeing an appeal from an administrative agency. The district court's only ability is to determine substantial evidence of conformity with the regulations. You see what you're doing, though? What you're doing in making that argument and every other argument that you've made, you're challenging the structure created by Congress because it's unfair to you. But it's unfair to everybody. It's a bureaucracy, and in Cumberland, we criticized it quite significantly. It was a 10-year backlog back then. Okay. And so it is a problem, but Congress is aware of it. They're addressing it. Apparently, they've got it down to still unacceptable. They're looking at catching up by 2022 or something like that, which is now a three-year backlog from the 10-year in Cumberland. But it's still a problem, and your notion that they shouldn't begin recoupment so early because it's hurting you financially, that's what the structure is. Okay, and, Your Honor, that is a discretionary act, and I want to highlight, as we get closer to this, the extended repayment schedule was not taken because CMS has no discretion to go beyond 60 months. This, my client, who... Why couldn't you have taken... I mean, it seems to me there were so many other avenues available to you. One, we've already been over to go to the ALJ and then to the federal district court to escalate through the system. And then a third one is I understand you could have spread the terms of repayment and that any provider can extend the terms of repayment over a five-year period. Your Honor, to answer your question specifically, because that would have required my client, whom I represented in this process, to pay $1.2 million per year, and his total revenue per year was $700,000. So he literally couldn't afford it. And I know all of the ERS managers. I would think that the five-year plan would significantly lessen the burden. Your Honor, the five-year plan was more than he was receiving. There wasn't any way fiscally possible, and CMS does not have discretion to go beyond 60 flat amortized payments. They don't have that discretion. If it's anything outside of that statutory bounds, it has to go to Treasury, and if the debt goes to Treasury, the provider is in collections and fighting litigation from the Treasury and is potentially going to be excluded. While they wait three years for their hearing that is mandated, and there's no ability for them to even get the evidence that is missing because it will only be remanded to the ALJ to order CMS to produce it. You can take that up with the legislative branch. The point is that you may have significantly overbilled for the health care services that you dispensed. I don't know the answer to that. But there is a system by which the question of whether, you know, you're the innocent party you claim or whether you significantly overbilled the government, and what we know is a widespread problem of overbilling, causing the loss of many, many millions of dollars every year that can be spent on so many other worthwhile health protection purposes. And the system that Congress has laid out has given you pre-deprivation protections, both before the MAC and then before qualified medical professionals at the QIC level who explain their decision. Now, given the volume of health care providers, is every health care provider going to get every procedure they want? Is every health care provider going to achieve every outcome they want? No. But we have a system. It's not perfect, but it's the best we can do and Congress is trying to make it even better. But as both of my colleagues have said, we have no authority to turn this procedure inside out and dictate the timing of agency recoupment efforts and saying that Congress has struck the balance wrong. I couldn't agree more with my colleague Judge Agee that this is a separation of powers question. It really is about jumping into something that is so clearly within Congress's power of legislation and Congress's power of the purse. This court has authority to restrain a government agency for a discretionary act that is depriving someone of constitutional due process that is wholly bound in this hearing. Let me just ask you. The whole premise for our intervention in changing the system is that the agency is doing something unconstitutional. Your Honor, a denial of... I'd like to hear from you precisely what has the agency done that's unconstitutional. The agency has withheld a constitutional right to a prompt post-deprivation hearing of a property interest for north of three years and caused irreparable harm. We addressed that in Cumberland, and the answer to that is if they're delaying their response to your claims or your challenges, you can escalate and go to the next level. And, Your Honor... And that saves the system because it gets you into a court. And, Your Honor, I am asking the court to focus on exactly what is not available by escalation. We do not get a de novo... I'm asking us because the system gives the agency the right to do what it's doing. It is collecting as the statute authorizes it to do. Whether it's discretionary or not, it authorizes it. Now, the only way we're going to disrupt that is if they're doing something unconstitutional. And your argument is, no, it's not unconstitutional. I don't quite know what your argument is. Your argument is, basically, they're not complying with the statute. My argument, Your Honor, is that under the Constitution of the United States, you're entitled to a prompt post-deprivation hearing, and we have a litany of case line that... That challenges the system because the system has time periods built in, specific time periods. And if those specific time periods are not adequate under the Constitution, then you're challenging the whole system. You can do that, but that's a different issue. That's a pretty big issue. Your Honor, we are asking, which I believe the district court correctly ruled, that this court has authority to intervene and enjoin a discretionary act in preservation of a mandatory duty which has been found to be the constitutional embodiment of our due process rights in an ALJ hearing. How would we do what you want us to do without overruling Cumberland, which is a panel we have no authority to do? Your Honor, I can answer that very specifically. Cumberland was a mandamus request asking to force an agency to dictate. We're not asking to step out of the 3-year, 4-year wait. We are asking to survive until we get our day in court in our constitutional hearing. That is all we are asking for. But see, your survival is based on the agency's, at least your argument, is based on the agency's exercising the authority, the statute and the regs give it. In other words, the discretionary action by the secretary in collecting now is based on the secretary's conclusion that you've been overbilling. The record that I looked at looks like more than just overbilling. It looks like, actually, it looks like fraud from what I read the little bit. I don't know if anybody's accused that, alleged that, but the things they laid out were very serious, and I don't know if they were deliberate, but it doesn't quite add up. Okay, and, Your Honor, I'll be frank with you. You spoke earlier in this hearing that there was time period issues, and there was wheelchairs, and... Well, there was billing for things not even covered by Medicare. Okay. A lot of billings, and they... and you haven't really disputed that. I mean, there... Your Honor, yes, we have, very thoroughly, and I... It's a question of law, right? Yeah, and the merits that the court keeps referring to of whether or not my client provided claims adequately or not is not before this court. It's not before us, but it was before two levels of the agency. And after two levels of the agency, they reached the conclusions that you were overbilling, and they wanted to recoup it. Now, for a court to come in and second-guess that decision requires us to intervene where every other hospital could also intervene because they're making the same claim. They... Every hospital thinks that when Medicare pulls back on these or denies claims, they should have been paid, because they submitted the claim. Your Honor, I don't represent a hospital. I run a small practice. Well, a hospital, a practice, a health care provider. And to be very clear, we still overturn 44% of those second-level determinations at ALJ hearings today. That's the way the agency system is designed. You can get them overturned, you can appeal them higher, and you can actually get to a full hearing before a federal court. Your Honor, the system does not allow what you just said. It does not allow a hearing passed in ALJ. It does not allow a hearing on the merits passed in ALJ. If we are missing evidence, as we specifically are in this case, to prove our case, we only get remanded to the ALJ. The only statutory authority given to the council or to the district court is to remand it back to a hearing. So we've been waiting three years for a constitutionally protected hearing. Just to follow up on what Judge Agee has said, how do we differentiate your case from many, many thousands of others? And if we can't, because there are going to be a lot of health care providers that think they build honestly and that recoupment is taking place too soon. And it seems, I know every health care provider is going to say, no, my case is different, but I don't understand how we differentiate you from many thousands of others. And if we can't persuasively differentiate it, then we are indeed overturning the system. Actually, Your Honor, I can answer that for you exactly. If you look at the precedent that is going on right now at the district level with this issue all across the country, many of the requests for injunctions are denied because of their fiscal position in establishing irreparable injury. And the real question before you is, do you trust your district courts to determine irreparable injury and a balance of the harms under extraordinary writ? And I do believe this court does, because Cumberland was asking this court to force the government outside this process. We are asking this court for this process, and we are asking you to trust your district court to assess whether the elements of an extraordinary writ were met. Collateral attack on the process is outside the process. And, Your Honor, Matthews v. Eldridge clearly says collateral attack is appropriate, and there is subject matter jurisdiction to make that collateral attack. And we are asking for collateral attack for a denial of due process to restrain a discretionary act. And, Your Honor, I trust the district courts. A lot of them are throwing them out. I am having substantial difficulty in understanding the basis for your claim that due process was denied without challenging the system. You're basically saying that the secretary, in rejecting your claims at the second level and starting recoupment, violates the Constitution. No. You have to be. No. No, I'm not, Your Honor. What is your argument? I don't understand it. My argument, Your Honor, is that we've waited three years for what the Constitution requires, and we were dying. Just a minute. Step back. Yeah. You're waiting three years for a system that's causing delay, but the system has an escape valve. And that's what we pointed out in Cumberland. And, Your Honor? Just a minute. All right, I'm sorry. I'm excited. The system, I understand, and you're making a forceful argument. I understand that. But we have to be getting down to a constitutional violation to even get into equity. You talk about the relevant harms and so forth. We have to have a cause of action, and I don't understand your cause of action. Your cause of action is, essentially, that the Secretary's not applying the system, but you haven't pointed to anything he's not applying except for the time delay. And, Your Honor? And the time delay has the escape valves. Every U.S. Supreme Court constitutional case. Well, answer my question. Oh, yes, I am. I don't want to hear about the cases. No, I am. I want to hear about your actual claim. My claim is that under the first two levels of review, we presented adequate challenge and asked for missing evidence that we've never been given. And my only ability to get that evidence... What evidence? What evidence do you want? The RATS stat underlying data to prove the math. And, Your Honor, it works like this with extrapolations. Didn't you get some partial relief down at the first two levels, did you not? But, Your Honor, the $44,000 worth of sample claims that they used to extrapolate to 6.6... Didn't you get some partial relief at those first two levels? We got partial relief on 13 DME claims. Yes, but... The answer is yes. No, Your Honor, because the 6.6 million is based on 40,000. So everything in this case is on the math. And basically what we've been given twice and what has been sustained twice is basically here's my problem, here's my answer, and they didn't do their work. They didn't show their work. Mr. Bittinger? Yes, Your Honor. I want to say, first of all, I've appreciated your argument and the passion with which it was tendered. And that's just great. I hope you'll appreciate my concern that there are limits on the extent of this court's power to fix everything. There are limits. It's not that there's a... We're not sympathetic to what you're saying, but there are limits to what we can do. One of the limits is stepping outside the normal escalation and appeals process and entertaining collateral attacks, which we would be flooded with. And the other thing is, the other limit on our authority is basically we can't redesign a system that Congress has struck a balance with and said recoupment begins with the ALJ phase. There are just limits to what we can do. And all I can say is I think your testimony would have been very persuasive in a different forum, and that forum would be a legislative hearing. And draw attention in that legislative hearing to the hardship that health care providers like yourself are facing. But we can't fix it because of a legislative authority and because the system is set up to provide escalation through direct appeals to ever higher levels. I just say take these wonderful arguments you have, take them across the street in Capitol Hill, and you may find a sympathetic ear because I don't think that Congress is insensitive to the problems that you've outlined. And, Your Honors, I know you have been very gracious on your time and patient with me as I presented my argument. Well, we want to thank you, and I want to say I have always regarded it only as a plus that a lawyer believes passionately in a client's cause and comes before court and expresses it. So I just want to say thank you. All right, and thank you very much, Your Honors. I appreciate it. Mr. Salzman, do you have anything further? Only if the past argument has raised any questions that the court would like me to address, but otherwise I'm happy to rest. Can I just ask you, the claimant here, the health care provider, is asking for the methodology for... For the extrapolation? Extrapolation. Yes. And what's your response to that? Sure. So obviously we're working here on a record that is just the record of materials that they essentially introduced in district court. But if you look at JA39, there's a reference there to how we gave them an encrypted CD with all of the methodology that went into that documentation. If you look at JA148, it's a page from the QIC's decision, the Second Level Reviewer's decision, that noted that on the materials in record, the QIC employs a statistician and that that statistician was, in fact, able to recreate the sample and test its validity. So they allege that there are additional materials that... And if you look... Oh, one more thing I'd point you to is their own expert report. Your argument is based on that, that you did provide the method and that a statistician independent of that was able to duplicate the extrapolation. Well, yes, Your Honor, that's half my argument. But the other half... And the last document I'd point you to is JA228, which is their expert report saying all of the material their expert reviewed, which clearly came from the auditor. But even if you set all that aside, let's say we didn't give them some documents they were entitled to. That's a very good argument that they could make if they escalate and go to district court and say that the agency decision isn't supported by substantial evidence because the materials aren't in the record. The agency has every incentive to put the materials in the record because we know there's a potential for ultimate judicial review, and we need to have that record in there. There's good reason from the joint appendix here to think that those materials are in here, but if not, they're free to argue that in court. Thank you.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, G. Steven Agee